OPINION OF THE COURT
Patrick A. Sweeney, J.
The plaintiff commenced this mortgage foreclosure action on September 2, 2009. Pursuant to CPLR 3408, the parties appeared for mandatory settlement conferences before a court attorney-referee in the Supreme Court Foreclosure Department. The action was then referred to this court, which conducted several conferences in an attempt to work out a resolution. After repeated attempts to reach an agreement on a loan modification, this court set the action down for a bad faith hearing based on the conduct of the plaintiff. A hearing was held on September 22, 23, and 27, 2010.
At the hearing, the defendant Michela Meyers testified on behalf of the defendants. Meyers testified that the defendants took out a mortgage with the plaintiff Wells Fargo in 2004. The amount of the monthly payment had steadily increased to $2,826.50 in January 2009. The defendant Paul Meyers is a New York City police officer who earned a significant amount of overtime and had a second job to help pay the mortgage. Paul Meyers lost his second job and his overtime was cut back by the Police Department. Michela Meyers is unable to work due to health issues. As a result, Michela Meyers contacted the plaintiff to request consideration for a modification. Meyers testified that the defendants were not in default but were struggling to pay the mortgage. She claimed that several representatives of the plaintiff told her that she could not apply for a modification until she was three months’ late with payments. According to Meyers, she was told to default on the mortgage in order to apply for a modification. Meyers testified that she followed this advice, made a down payment and faxed over a hardship letter along with financial documentation. Meyers claimed that the plaintiff kept losing the documents and that she had to re-fax the information numerous times.
In August 2009, the defendants received a proposal for a Home Affordable Modification Program (HAMP) loan trial pe *699 riod. The modification required the defendants to make three trial payments in the amount of $1,955.49. The document provided that if the defendants were in compliance with the trial period and all representations were true, “then the Lender will provide [the defendants] with a Loan Modification Agreement.” The proposal also stated that if the defendants complied with the terms of the trial period, the plaintiff would not start foreclosure proceedings. On September 1, 2009, the defendants accepted the proposal and Meyers testified that she faxed and mailed a copy back to the plaintiff on that date. The next day, the plaintiff commenced this foreclosure action.
The defendants made the monthly payments as required by the modification agreement. On December 2, 2009, the defendants were advised that, due to a discrepancy in the income information provided, a new trial period was required with a slightly lower monthly payment. The defendants accepted that proposal and made the required payments along with additional payments. However, on April 28, 2010, the defendants were sent a letter denying their request for a modification agreement. The letter stated that the terms of the mortgage could not be adjusted because the defendants’ current monthly housing expense was less than or equal to 31% of their gross monthly income. On May 20, 2010, the defendants received another letter indicating that the plaintiff could not adjust the terms of the mortgage because the investor on the mortgage declined the requested modification. Within a week, the defendants were sent additional letters advising them of mortgage options and again directing them to apply to the Home Affordable Modification Program.
The parties appeared for a settlement conference on May 18, 2010 and Meyers testified that an attorney for the plaintiff advised that the defendants would receive a modification within five to seven days. Instead, the defendants received another denial letter. This court held several settlement conferences and on July 22, 2010, the plaintiff offered a new modification which required monthly payments of $2,554. Meyers testified that the defendants could not afford that payment but could afford the $1,955 payment from the original modification.
Tarlisha Nelson, a loss mitigation manager, testified for the plaintiff. Nelson did not have any personal knowledge of the defendants’ case and testified that she reviewed the file for the first time the week of the hearing. Nelson testified that Wells Fargo is the servicer of the note and Freddie Mac is the ultimate *700 investor on the loan. According to Nelson, the plaintiff cannot make a modification without approval from Freddie Mac. Nelson asserted that the plaintiff tried to work with the defendants but could not modify the loan because the defendants’ monthly housing expense was less than or equal to 31% of their gross monthly income. She claimed that the calculation indicated that the defendants’ figure was 26.04% which precluded a modification under the HAMP guidelines. Nelson testified that the plaintiff was still trying to work with the defendants and offered the most recent modification which was approved by Freddie Mac.
A foreclosure action is equitable in nature and triggers the equitable powers of the court (see Notey v Darien Constr. Corp., 41 NY2d 1055 [1977]; Jamaica Sav. Bank v M. S. Inv. Co., 274 NY 215 [1937]; Mortgage Elec. Registration Sys., Inc. v Horkan, 68 AD3d 948 [2d Dept 2009]). “Once equity is invoked, the court’s power is as broad as equity and justice require” (Mortgage Elec. Registration Sys., Inc. v Horkan at 948, quoting Norstar Bank v Morabito, 201 AD2d 545 [2d Dept 1994]).
CPLR 3408, which was enacted in 2008 as part of New York’s comprehensive subprime lending reform legislation, requires a mandatory settlement conference in any residential foreclosure action involving a home loan in which the defendant is a resident of the property subject to foreclosure. The purpose of the conference is to determine whether the parties can reach a mutually agreeable resolution to help the defendant avoid losing his or her home. The statute requires that both parties “negotiate in good faith to reach a mutually agreeable resolution, including a loan modification, if possible” (CPLR 3408 [f]).
Here, the record demonstrates that the plaintiff commenced this foreclosure action on September 2, 2009, just one day after the defendants accepted the proposed trial modification. The packet sent to the defendants advised them that a foreclosure action would not be commenced if the defendants complied with the terms of the trial period. Even if the plaintiff did not receive the defendants’ acceptance on September 1, the modification packet provided that the defendants had until September 9, 2009 to accept the offer. The plaintiff has offered no explanation for commencing this action while the modification proposal was still pending. Therefore, this conduct alone demonstrates bad faith on the part of the plaintiff which would invoke the equitable powers of the court.
The record also demonstrates that the defendants accepted the trial modification and made all the required monthly payments. The plaintiff then modified the payments and required a *701 new trial period. It is undisputed that the defendants again made all the monthly payments. Nevertheless, the plaintiff denied the defendants’ request for a permanent modification based on their debt to income ratio. However, the record contains no evidence to support this determination. The letter sent to the defendants is conclusory and does not establish how the plaintiff made this determination. The witness produced by the plaintiff had no personal knowledge of the decision and merely recited the figure in the plaintiff’s files. No evidence was submitted to demonstrate the actual calculation made by the plaintiff and whether the information used was correct.
In addition, the plaintiff has provided conflicting information regarding its denial of the modification. Less than one month after the initial denial, the defendants received another letter indicating that the plaintiff could not adjust the terms of the mortgage because the investor on the mortgage declined the requested modification. Within a week, the defendants were sent additional letters advising them of mortgage options and again directing them to apply to the Home Affordable Modification Program. This is inconsistent as the plaintiff takes the position that it cannot modify the loan without the approval of Freddie Mac but offered no evidence as to whether the initial modification was approved by Freddie Mac before it was sent to the defendants. Freddie Mac is not a party to this action and is not the party seeking to foreclose the mortgage. The plaintiff has failed to demonstrate any good faith basis for refusing to honor the terms of the trial modification or offering another similar proposal. The defendants complied with all the requirements of the trial modification and have appeared at all the conferences in this action. The defendant Paul Meyers is gainfully employed and the defendants are trying to avoid losing their home. Under these circumstances, the court finds that the plaintiff has acted in bad faith. In view of the court’s broad equitable powers, the court finds that the appropriate remedy is to compel specific performance of the original modification agreement proposed by the plaintiff and accepted by the defendants (see e.g. EMC Mtge. Corp. v Gross, 289 AD2d 438 [2d Dept 2001]).
Accordingly, it is ordered that the plaintiff is directed to execute a final modification based upon the terms of the original modification proposal, and it is further ordered that the complaint to foreclose the mortgage is dismissed.